AtkiNSON, Judge,
delivered the opinion of the court:
The plaintiff herein was a civilian captain of a Navy collier, serving under an express contract with the United States, who instituted this suit to recover the sum of $4,319.33, based upon the following items:
1. The difference between the amount paid for subsistence of certain Asiatic cooks and stewards at 25 cents per day and the amount stipulated by the contract, 50 cents per day each, stated at $988.
*257 2. Traveling expenses from Manila, P. I., to Brooklyn, N. Y., after being relieved of the command of his vessel, $223.
3. Salary from the date when he was relieved of the command of his vessel, January 9,1907, to the date when he was dismissed from the service of the United States for irregularities in his accounts, January 22, 1908, $3,108.33.
Plaintiff, as above stated, entered into a contract with the Government on June 14, 1902, to serve as captain of a Navy collier under the conditions set forth in section 1 of the contract, which reads as follows:
“ 1. The party of the first part will assume and exercise command, as master, of a United States naval collier, and the responsibility for a careful navigation to and between such ports., and for such and all purposes as may be specified in orders issued to him from time to time by the Secretary of the Navy, or other naval authority designated by him; and the party of the first part further agrees that his command as such master shall cease and determine at the will and pleasure of the party of the second part.”
The contract further provided that plaintiff was to employ the crew of the vessel in accordance with the rules and customs of the merchant marine, and was authorized to pay them their wages and to furnish subsistence for them while under his command. He was to be allowed 50 cents per day for the subsistence of each member of the crew, except Asiatics, for whom he was to be allowed 25 cents per day. On July 9, 1904, the contract was modified in regard to subsistence, allowing 25 cents per day for each Asiatic, except cooks and stewards of the complement prescribed by the Bureau of Navigation. This modification leaves, as we understand it, the subsistence of Asiatic cooks and stewards at the same rate as that of all the crew before the supplemental contract was made, and provided 50 cents per day for the white members thereafter. The accounting officers, in the settlement of plaintiff’s accounts, only allowed the sum of 25 cents per day, which seems to have been an oversight or clerical mistake, because counsel for the United States says in his brief, “ It would therefore appear that he is entitled to credit for this item, if the same has been correctly computed *258 from the triplicate pay rolls filed as exhibits to the deposition of the claimant.”
We accordingly render a judgment on said item for the sum of $988.
The second item in the petition is for traveling expenses of plaintiff from Manila, P. I., where he was relieved from duty as master of the Government collier Alexander, to his home at Brooklyn, N.' Y.
It appears that plaintiff was charged with irregularities in his accounts, and he was summoned by Admiral Brownson before a board of investigation at Manila, on January 9, 1907. He thereupon reliiiquished his command of said collier, and on that date he was placed on furlough by the Navy Department (finding IY), it is presumed, although it is not shown, for the purpose of allowing him to attend said board of investigation. On or about January .18, 1907, the investigation of his accounts was completed and a report thereon was made to the Navy Department by said board. On said last-mentioned date plaintiff applied to the proper officer at Manila for transportation to his home at Brooklyn, N. Y., which request was refused. Whereupon he, without receiving orders or permission so to do, left Manila and arrived at his home in the United States on or about March 1, 1907.
On December 26, 1907, the supervisor of naval auxiliaries informed the Secretary of the Navy that the board of investigation had reported that the irregularities for which the claimant was furloughed had been substantiated and he recommended the revocation of his contract and his dismissal from the service at as early a date as practicable. On January 22, 1908, in accordance with a recommendation of the Bureau of Navigation, his contract was terminated by the Secretary of the Navy and he was requested to make prompt settlement of his accounts with the Auditor for the Navy Department.
Thereafter, on May 9, 1908, the Auditor for the Navy Department found plaintiff to be indebted to the Government, on various items, in the sum of $8,408.73. Appeal thereon was taken from the auditor to the Comptroller of *259 the Treasury, who affirmed the decision of the auditor, and suit was entered against plaintiff and the sureties on his bond in the District Court of the United States for the Southern District of New York to recover said amount.
Plaintiff had been in the service of the Government for about six years in Asiatic waters when he was relieved from duty by the furlough previously referred to; but it appears from the findings that immediately after the board of investigation into the state of his accounts was made known to him, without permission or orders from the commander of the Asiatic Fleet, he, of his own volition, departed for his home in the United States. We find no act of Congress and no regulation of either the Army or the Navy that authorizes the payment of traveling expenses of an officer, enlisted man, or other employee of the Government, or expenses while so traveling for the interests of the service, unless the traveling is done by order of an officer having the authority to make such order. It has been determined by a number of decisions of this court that traveling in the maimer above stated by an officer, soldier, or other representative of the Government from or to the continental limits of t]ie United States is entitled to both salary and expenses while so engaged, if such travel is under proper orders and for the good of the service. The court has gone even further by holding that one who enters the public service of the United States and is taken to foreign countries in such service and is there discharged, the Government, under all the rules of fairness, is bound to furnish him with transportation and other necessary expenses in his return to the place whence he started, provided such travel is done under proper orders. Sherburne v. United States, 16 Cl Cls., 491, 497; Beaman v. United States, 19 Ibid., 511; and Davis v. United States, 47 Ibid., 195.
But the above cases are not this case. Plaintiff was not discharged at a foreign port. He was only furloughed until his accounts with the Government could be investigated by a military board appointed for that purpose. He was not on active duty during the pendency of the investigation of his accoimts at Manila, but it appears from the findings of *260 fact that immediately after the result of the investigation was made known he, of his own accord, saw fit to remove himself from the station of his vessel, and without authority boarded a ship for his domicile in the United States. Had it been determined by the naval officials in command at Manila to reinstate him as master of the collier Alexander or to the mastership of some other Government collier, his return to Manila would have been essential, if he should decide to remain in Government service. Under such conditions it seems to us unreasonable to contend that he would be entitled to travel pay from Manila to Brooklyn and back again to Manila in order to resume such command. Furthermore, it does not appear that plaintiff at any time filed a claim for his traveling expenses from Manila to Brooklyn, N. Y., prior to bringing this suit. Consequently, we fail to find any just or proper reason, either in fact or in law, upon which to base an allowance on this item of the petition ; therefore the same is accordingly dismissed.
Plaintiff, in addition to asking the Government to refund his traveling expenses from Manila to his home in the United States, after abandoning his post of duty without departmental leave, demands pay, under item 8 of his petition, for salary from January 9, 1907, the date he was relieved from official duty under furlough, to January 22, 1908, when he was notified by the Bureau of Navigation that his contract with the Government was terminated. The contract with plaintiff, section 1, ante, provides, “ and the party of the first part further agrees that his command as such master shall cease and determine at the will and pleasure of the party of the second part.”
In the case of Frazier v. United States, 10 Comp. Dec., 462, it was held that “The master of a vessel is a seaman within the meaning of section 4612 of the Revised Statutes, and when discharged for cause he is not entitled to pay after the date of his discharge, or to transportation and subsistence back to the United States.” In the act of March 3, 1901, 31 Stats., 1029, appropriating funds for the Naval Establishment, it is provided that “Actual expenses only shall be paid for travel under orders outside the limits of *261 the United States in North America”; and we may add that in addition to these authorities it appears that on January 7, 1907, two days before plaintiff was relieved from official duty as master of the collier Alexander, the commander in chief of the United States forces on the Asiatic station directed the paymaster of the navy yard at Cavite, P. I., to settle the last pay roll and outstanding accounts of A. E. Gove, master U. S. naval collier Alexander, who has been placed under suspension by authority of the Navy Department”; and it further appears that his salary was paid in full to and including January 9, 1907, the date of his “furlough.” This fact, when considered in connection with the further fact that he abandoned his place of service without orders, is, to our minds, conclusive proof that he considered his contract with the Government as ended and was entitled to no further remuneration from the Government than that which he had already received.
Section 11 of the contract provides when and how plaintiff’s salary shall be paid in these words: “ The party of the first part is to be paid for carrying out this contract, as hereinbefore stipulated, and from the date of completing the same, $250, in lawful money of the United States, per calendar month, or proportionately for any part thereof * * thus implying that salary shall be paid only for actual service rendered. This, when considered in connection with section 1 of the contract, which, pro vides that the same may be terminated at the will and pleasure of the Government, coupled with payment of salary in full when suspended from duty, the provision of the appropriation act of Congress above quoted, the abandonment without orders of his field of operations, it is but reasonable to conclude that plaintiff considered his relations with the Government as finally terminated. Yet, in the face of all these facts, he brings this suit to recover pay for nearly 13 months’ service that he did not render, basing his claim therefor on the technical ground that he had not been officially notified that his services were no longer needed by the United States. Such contention, to our minds, seems not only unreasonable, but inconsistent and unjust as well; consequently there should be no allowance under this item.
*262 Considering the whole case, the court decides that judgment should be entered against the United States on Finding III for the sum of $988 in favor of the plaintiff, and that the remaining claims contained in the petition should be dismissed as set forth in the conclusion of law, and judgment thereon should be awarded to the United States.
It is so ordered.